## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**WESLEY L. ADKINS,**

     **Plaintiff,**

     v.                            **CASE NO.  25-3088-JWL**

**STATE OF KANSAS, et al.,**

     **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff and Kansas prisoner Wesley L. Adkins brought this pro se civil rights action under 42 U.S.C. § 1983 claiming the violation of his constitutional rights during his confinement at El Dorado Correctional Facility (EDCF) in El Dorado, Kansas. On May 28, 2025, the Court issued a memorandum and order (M&O) identifying deficiencies in the complaint that left this matter subject to dismissal in its entirety and granting Plaintiff time in which to file a complete and proper amended complaint that cures the deficiencies. (Doc. 4.) This matter comes before the Court on Plaintiff's amended complaint, filed June 10, 2025. For the reasons set forth in this order, this matter will be dismissed because Plaintiff has failed to state a plausible claim for relief against a named Defendant.

### I.  The Initial Complaint

The initial complaint, filed on May 6, 2025, named as Defendants in this matter the State of Kansas; the Kansas Department of Corrections (KDOC); EDCF Classification Manager David S. Lewis; EDCF Lieutenant Cody W. Austin; EDCF Warden Tommy L. Williams; and Darcie Holthaus, KDOC Corrections Manager, Facility Management. (Doc. 1, p. 1-3.) As the factual background for the complaint, Plaintiff alleged that on May 1, 2024, "KDOC officials" violated

his rights under the Eighth Amendment to the United States Constitution by exhibiting deliberate indifference to the conditions of his confinement "under K.A.R. 44-14-307," which he alleged presented a known risk of serious harm. *Id.* at 2. He stated that the living conditions "under" this Kansas administrative regulation "consist of 'limited contact, no yard, no phone calls, no personal property, no state hygiene, no paper, no writing utensils, no bible, etc." and that the administrative regulation in question was revoked in February 2002. *Id.* at 4-5.

Plaintiff further alleged in the initial complaint that on May 1, 2024, he appeared before the Restrictive Housing Review Board, hereinafter referred to as "the Board," and asked to be "taken off of the living conditions, under K.A.R. 44-14-307.'[*sic*]" *Id.* at 5. Defendant Lewis allegedly "deliberately disregarded" this request, stating that Plaintiff's conditions of confinement would be reviewed weekly. *Id.* Defendant Austin also "deliberately disregarded" Plaintiff's request, stating that it would be at least 4 months before he would even consider putting Plaintiff into a regular segregation cell. *Id.*

On May 4, 2024, Plaintiff submitted a Special Kind of Problem Grievance to Defendant Williams, asking "'to be taken off of the living conditions, under K.A.R. 44-14-307.'" *Id.* at 6. Five days later, Defendant Williams "deliberately disregarded" Plaintiff's request, stating that the topic of the grievance was not appropriately categorized as a special problem. *Id.* Plaintiff appealed to the Secretary of Corrections, but on May 29, 2024, Defendant Holthaus "deliberately disregarded [Plaintiff's] appeal," stating that his "'complaint was clearly about the classification decision making process, and that, the Kansas Administrative Regulations prohibits use of the grievance procedure to address this concern.'[*sic*]" *Id.*

As the sole Count in the initial complaint, Plaintiff asserted that by the actions set forth above, Defendants Lewis, Austin, Williams, and Holthaus each violated his Eighth Amendment

rights. *Id.* at 4-6. As relief, Plaintiff sought $1,000,000.00 in compensatory damages—$250,000.00 from each Defendant in his or her official capacity—or whatever this Court deems appropriate. *Id.* at 9.

## II. Screening Standards

Because Plaintiff is a prisoner, the Court is required by statute to screen his complaint and to dismiss it or any portion of it that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. *See* 28 U.S.C. § 1915A(a) and (b). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48-49 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). The Court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court must determine whether Plaintiff has "nudge[d] his claims across the line from conceivable to plausible." *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir.

2009) (quotation marks and citation omitted). "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not met his or her burden. *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, at 550 U.S. at 570).

## III.  The M&O (Doc. 4)

After conducting the statutorily required screening, the Court issued the M&O, in which it identified multiple deficiencies in the initial complaint. First, the M&O reminded Plaintiff that the State of Kansas and its agencies are immune from suit for money damages under the Eleventh Amendment and that he had not demonstrated that any exception to that immunity applies. (Doc. 4, p. 4-5 (quoting *Adkins v. Kansas*, 2025 WL 436038, *2-3 (D. Kan. Feb. 7, 2025) (unpublished).) Thus, the KDOC and the State, both named as Defendants in the complaint, were subject to dismissal. *Id.*

Second, Plaintiff was reminded that "an allegation that an official denied or failed to respond to a grievance is not enough to show personal participation as required for a plausible claim under § 1983." *Id.* at 5 (quoting *Adkins*, 2025 WL 436038 at *5). Because the only allegations made in the complaint regarding Defendants Williams and Holthaus was a conclusory assertion that their responses to Plaintiff's grievances "deliberately disregarded" Plaintiff's complaints, Defendants Williams and Holthaus were subject to dismissal. *Id.* at 5-6.

Third, the M&O set forth the test for determining whether conditions of confinement in a prison or jail violates the Eighth Amendment:

> An inmate raising an Eighth Amendment conditions-of-confinement claim must prove both an objective and subjective component associated with the deficiency. The objective component requires conditions sufficiently serious so as to (1) deprive an inmate "of the minimal civilized measure of life's necessities" or (2) subject an inmate to "a substantial risk of serious harm." "The subjective

component requires that a defendant prison official have a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety." To prove deliberate indifference, a prisoner must adduce sufficient facts to show the defendant knew of and disregarded "an excessive risk to inmate health or safety." Under this standard, "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exist, and he [or she] must also draw the inference."

*Brooks v. Colorado Dept. of Corrections*, 12 F.4th 1160, 1173 (10th Cir. 2021) (citations omitted).

The sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation[, so] the 'circumstances, nature, and duration of the challenged conditions must be carefully considered.'" *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2011) (citation omitted). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id.* As the severity of the condition increases, the length of exposure required to make out a constitutional violation decreases. *Id.* In other words, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations . . . 'may meet the standard despite a shorter duration." *Id.* (citations omitted).

(Doc. 4, p. 6-7.)

The M&O pointed out that the initial complaint referred to being housed in conditions "under K.A.R. 44-14-307," but did not set forth specific factual allegations identifying living conditions to which he personally was subjected and which he believes violated his constitutional rights. *Id.* at 7. The M&O stated:

The complaint does not sufficiently identify circumstances, nature, and duration of specific conditions of confinement that  deprived Plaintiff of the minimal civilized measure of life's necessities, nor does the complaint allege facts that, if taken as true, show that a named Defendant was aware of and disregarded a substantial risk that Plaintiff would be seriously harmed by these conditions. Thus, Plaintiff has failed to allege facts that state a plausible Eighth Amendment claim based on the conditions of his confinement.

*Id.*

Finally, the M&O noted that Plaintiff sought only compensatory damages in the initial complaint, but he had not made the showing of a physical injury or the commission of a sexual act required by the Prison Litigation Reform Act for a prisoner seeking damages for mental or emotional injury. *Id.* at 7-8. And to the extent that Plaintiff sought to recover money damages from Defendants in their official capacity, such recovery was barred by the Eleventh Amendment. *Id.* at 8 (quoting *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011). For all of these reasons, the M&O explained, the complaint was subject to dismissal in its entirety. The Court granted Plaintiff time in which to file an amended complaint that cures the deficiencies. *Id.* at 8. Plaintiff was cautioned that if he failed to "file within the prescribed time an amended complaint that cures the deficiencies discussed herein, this matter may be dismissed without further prior notice to Plaintiff." *Id.* at 9.

### III. The Amended Complaint (Doc. 5)

On June 10, 2025, Plaintiff filed the currently operative amended complaint. (Doc. 5.) Other than omitting the KDOC, it names the same Defendants as the initial complaint: the State of Kansas, Defendant Lewis, Defendant Austin, Defendant Williams, and Defendant Holthaus. *Id.* at 1-3. As the factual background of this case, the amended complaint states that on April 8, 2024, the defendants collectively violated Plaintiff's Eighth Amendment rights by being deliberately indifferent to a substantial risk that Plaintiff would be seriously harmed by being housed in "living conditions under K.A.R. 44-14-307." *Id.* at 2.

The cited Kansas administrative regulation, which was revoked in February 2002 and was titled "Transfer to more restricted area in special cases," stated:

> A narrative shall be prepared to document any instance or incident leading to more restrictive confinement within the segregation unit. Transfers to more restrictive confinement shall be permitted only for administrative security and control, and shall not constitute or be used as punishment. Each such transfer to a

more restrictive confinement shall be authorized and approved by the segregation unit team manager or designee, or in that person's absence, by the shift commander or designee.

K.A.R. 2001 Supp. 44-14-307.

As the sole Count in the amended complaint, Plaintiff argues that his Eighth Amendment rights were violated when he was placed at substantial risk of serious harm. *Id.* at 4. As supporting facts for Count I, Plaintiff asserts that "[o]n April 8, 2024, Defendants[] subjected [him] to the unlawful living conditions, under K.A.R. 44-14-307," noting that K.A.R. 44-14-307 was revoked on February 15, 2002. *Id.* at 4-5. As in the initial complaint, Plaintiff explains that "[t]hese living conditions, under K.A.R. 44-14-307, literally consist of: Limited contact, no yard, no phone, no personal property, no state hygiene, no paper, no writing utensils, no bible, etc." *Id.* at 5.

Plaintiff asserts that in response to the "unlawful living conditions that Defendants were subjecting [him] to, under K.A.R. 44-14-307," he engaged in a three-day hunger strike by which he says he "subjected [him]self to self-harm." *Id.* at 5. On April 26, 2024, mental health professionals not named as Defendants prescribed a medication for Plaintiff's anxiety and depression that caused Plaintiff to experience serious side effects, after which the medication was discontinued and a different medication prescribed. *Id.* Plaintiff states that the medication experience "further harmed" his "psychological and physical state." *Id.*

The amended complaint reasserts Plaintiff's assertion that on May 1, 2024, he appeared before the Board and asked to be "taken off of the unlawful living conditions, under K.A.R. 44-14-307," but that Defendants Lewis and Austin "deliberately disregarded" Plaintiff's request. Defendant Lewis stated that Plaintiff's conditions of confinement would be reviewed weekly and Defendant Austin stated that it would be at least four months before he would consider placing Plaintiff in a regular segregation cell. *Id.* at 6.

Plaintiff also repeats in the amended complaint his allegations that in May 2024, Defendant Williams and Defendant Holthaus each violated his Eighth Amendment rights by "deliberately disregard[ing]" a grievance regarding Plaintiff's living conditions. *Id.* at 6-8. Plaintiff adds that on May 13, 2024, he told John W. Martin—a mental health professional and member of the Board who is not named as a Defendant in this matter—that the torment and torture to which Plaintiff was subjected "'will literally cause someone to kill themselves.'" *Id.* at 7.  As relief, Plaintiff seeks $1,000,000.00 in compensatory damages, with each Defendant responsible for one quarter of the amount, or whatever relief this Court deems just, necessary, and appropriate. *Id.* at 10.

In a memorandum in support of his amended complaint, Plaintiff repeats the facts set forth above. He also asserts at various points in the memorandum that he was kept in "the unlawful living conditions, under K.A.R. 44-14-307," for 86 days, for 99 days, and from April 8 until July 18, 2025, which is 102 days. (Doc. 5-1, p. 1, 8.) He contends that a "new study" shows that antidepressants are linked to patient infertility and early stages of dementia. *Id.* at 3. He adds that during his May 13, 2024 conversation with Mr. Martin, Mr. Martin said that the Board did not feel like the sanction Plaintiff had received for battery[1] was sufficient and that "a few officers" had recently been fired "due to their conduct." *Id.* at 5.

The memorandum also asserts that on June 5, 2024, Plaintiff appeared before the Board and "requested 'to be taken off of the living conditions, under K.A.R. 44-14-307, due to the living conditions, under K.A.R. 44-14-307, being revoked, and also, due to [Plaintiff] further being on Long-Term Restrictive Housing States, per IMPP 20-104A, Section IV(A)(B)(1).'" *Id.* at 5-6.

---

[1] The Court takes judicial notice of Plaintiff's case *Adkins v. Kansas*, Case No. 24-3210-JWL, in which he stated that on April 6, 2024, he battered a correctional officer at Lansing Correctional Facility; he was transferred to EDCF two days later. *See* 2025 WL 1282661, *1 (D. Kan. May 2, 2025) (unpublished).

Defendant Austin said that he would review the request. *Id.* Plaintiff submitted a grievance related to his "solitary confinement" on June 28, 2024. *Id.* at 6.

In July 2024, Plaintiff submitted multiple health services request forms asserting that he was suffering from "'Intentional Infliction of Emotional Distress." *Id.* at 6, 8. On July 1, 2024, Plaintiff met with Mr. Martin, who confirmed his awareness of Plaintiff's diagnosis of "manic depression." *Id.* At a meeting with Mr. Martin the following day, Plaintiff asserts, Mr. Martin told him that he had told Defendant Austin, with respect to Plaintiff's "living conditions," that "[e]nough was [e]nough." *Id.* at 6-7. When Mr. Martin asked Plaintiff if he was suicidal, Plaintiff replied that he "'had contemplated suicide, due to the unlawful living conditions that Defendants, were subjecting [him] to, under K.A.R. 44-14-307.'" *Id.* at 7. On July 3rd, 2024, Defendant Lewis told Plaintiff "that 'He would remove [Plaintiff] from the unlawful living conditions, under K.A.R. 44-14-307,'" but Plaintiff was not moved until July 18, 2024. *Id.* at 8. In the intervening week, Plaintiff again met with Mr. Martin, who told Plaintiff that his transfer was coming and the Board was "'well aware of the devastating effects that long stays in isolation have on inmates['] mental, and physical health.'" *Id.*

## IV. Analysis

First, the Court notes that the amended complaint names as a Defendant the State of Kansas. For the reasons set forth in the M&O and also in Plaintiff's previous cases in this Court, the Eleventh Amendment requires that the State of Kansas be dismissed from this suit. (*See* Doc. 4, p. 4-5.) Similarly, the amended complaint, like the initial complaint, fails to allege sufficient personal involvement in a constitutional violation by Defendants Williams and Holthaus. Thus, for the reasons already set forth in the M&O, Defendants Williams and Holthaus must be dismissed

from this suit. *See id.* at 5-6. This leaves Plaintiff's Eighth Amendment claims against Defendants Lewis and Austin, for which Plaintiff seeks money damages.

Even liberally construing the amended complaint and taking all facts therein as true, Plaintiff has failed to show a plausible claim that Defendant Lewis or Defendant Austin were deliberately indifferent to Plaintiff's health and safety by subjecting Plaintiff to a substantial risk of serious harm. Again, Plaintiff refers only to being confined in conditions "under K.A.R. 44-14-307," but he does not clearly state what conditions he personally experienced. Liberally construing the amended complaint, Plaintiff may intend to allege that he was allowed only limited contact, no yard time, no phone, no personal property, no state hygiene, no paper, no writing utensils, and no bible—all of the conditions he lists as existing "under K.A.R. 44-14-307."

But K.A.R. 44-14-307 does not require such conditions. In fact, it does not refer to specific conditions of confinement at all and the intended purpose of Plaintiff's repeated citations to this now-revoked administrative regulation remains unclear. Even assuming that Plaintiff personally suffered all of these deprivations for approximately 100 days, that does not require the conclusion that he was at substantial risk of serious harm.

To the extent that the amended complaint pleads facts intended to show that Mr. Martin was aware that the conditions of Plaintiff's confinement posed a substantial risk of serious harm to Plaintiff, Mr. Martin is not a defendant in this case. Mr. Martin's comments on the knowledge of other Board members' regarding the "devastating effects that long stays in isolation have on inmates['] mental[] and physical health" do not show that Defendant Austin or Defendant Lewis were aware that Plaintiff was at substantial risk of serious harm if he remained in a restrictive housing area for approximately 100 days. Moreover, it is clear that Plaintiff was not denied all human contact, as happened in some of the cases Plaintiff cites in his memorandum in support of

his amended complaint. The facts alleged in this matter reflect Plaintiff's multiple conversations with various prison staff, including four meetings with Mr. Martin and two instances in which he appeared before the Board to request a housing change.

Finally, the Court finds that the amended complaint, like the initial complaint, fails to allege facts that allow Plaintiff to recover money damages in compliance with 42 U.S.C. § 1997e. As noted in the M&O, § 1997e(e) states:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

Liberally construing the amended complaint, the Court finds no allegations relating to the commission of a sexual act. The allegations that could be intended to relate to a showing of physical injury are as follows:

> On April 8, 2024, I subjected myself to self-harm, by going on a three (3) day hunger-strike, due to the unlawful living conditions that Defendants were subjecting me to, under K.A.R. 44-14-307.

> On April 26, 2024, my psychological and physical state, was further harmed, when mental health professionals prescribed me "Laxapro", for anxiety and depression. Moreover, within the first two (2) weeks of taking Laxapro, I started experiencing severe headaches, severe testicle pain, bladder leaks, urine strains, and erectile dysfunction. Mental health professionals, further discontinued Laxapro, and further prescribed me "Remaron."

(Doc. 5, p. 5.) With respect to the medication, Plaintiff also asserts in the memorandum in support of the amended complaint that a "new study shows that 'Antidepressants' are further linked to patients be[ing] infertile and further having early stages of 'dementia'." (Doc. 5-1, p. 3.) Returning to the amended complaint, Plaintiff asserts therein:

> On May 4, 2024, I further, submitted a Special Kind of Problems Grievance, to Defendant Williams, complaining of "the abuse of solitary confinement by Defendants Lewis, and Austin". I specifically, complained that "the living

11

conditions, under K.A.R. 44-14-307, were cruel and unusual punishment, and that, it was affecting me mentally, physically, and emotionally".

(Doc. 5, p. 6.)

As has repeatedly been explained to Plaintiff, "'conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based.'" *See, e.g.*, (Doc. 4, p. 2 (quoting *Hall*, 935 F.2d at 1110)); *Adkins v. State*, Case No. 24-3223-JWL, 2025 WL 604994, *2 (D. Kan. Feb. 25, 2025) (same) (unpublished); *Adkins v. Kansas*, Case No. 24-3210-JWL, 2025 WL 436038, *2 (D. Kan. Feb. 7, 2025) (same) (unpublished); *Adkins v. Kansas*, Case No. 24-3120-JWL, 2024 WL 4202369, *1 (D. Kan. Sept. 16, 2024) (unpublished). The assertion in a grievance that conditions of confinement are "affecting [Plaintiff] . . . physically" is the type of conclusory statement that fails to show a physical injury to satisfy 42 U.S.C. § 1997e(e).

The side effects Plaintiff describes experiencing after he was prescribed "Laxapro" include physical side effects, but they are not sufficiently related to the conditions of Plaintiff's confinement to allow him to recover compensatory damages in this case, which alleges an Eighth Amendment violation based on housing conditions. Even liberally construing the amended complaint, it does not allege that the side effects were caused by the conditions of his confinement; they were related to the specific medication, which was discontinued. (*See* Doc. 5, p. 5.) The speculation that the use of antidepressants may raise Plaintiff's risk for experiencing dementia or infertility in the future also does not show the *prior* physical injury to Plaintiff required by 42 U.S.C. § 1997e(e).

Finally, Plaintiff alleges "self-harm" in the form of a three-day hunger strike he engaged in to protest the conditions of confinement. This Court's independent research has revealed no case in which the Tenth Circuit has spoken directly to whether physical injury inflicted upon oneself can satisfy the showing required by § 1997e(e). In the most relevant case, the Tenth Circuit held

that it would not be futile to allow a plaintiff to amend his complaint to satisfy § 1997e(e) where his filings in the district court "alleged that he suffered self-harm, panic attacks, respiratory problems, head injuries, and severe mental issues as a result of his time in segregation." *Jamerson v. Heimgartener*, 752 Fed. Appx. 557, 563-64 (10th Cir. Sept. 21, 2018) (unpublished). In the present case, however, Plaintiff's hunger strike began on the same day as the housing conditions of which he now complains, which undermines the proposition that it was caused by those conditions. (Doc. 5, p. 4-5.)

Moreover, the United States District Court for the District of Colorado has recognized, in a case where a prisoner plaintiff asserted "'head banging' and 'self-mutilation'" as physical injuries to satisfy § 1997e(e):

> The physical injury requirement of the PLRA limits claims to situations where a physical injury causes (or is at least coincides with) emotional distress. *See* 42 U.S.C. § 1997e(e) (requiring "a *prior* showing of physical injury"). It does not extend to situations like this, where emotional distress is alleged to have caused one to physically injury oneself.
>
> The PLRA was designed to make it hard for prisoners to bring suits based on subjective feelings such as emotional distress. And whether a prisoner is harming oneself due to malfeasance of prison officials or for other reasons is just as difficult to prove or disprove. More problematically, as the *Argetsinger* Court explained, "allowing a self-inflicted injury to satisfy the physical injury requirement of § 1997e(e) would create a perverse incentive of self harm in prison populations." 2009 WL 3201088, *4. Allowing the sort of self harm alleged here to satisfy the physical injury requirement is inconsistent with the text and purpose of the PLRA. This claim fails not because Plaintiff's Complaint is read narrowly or broadly, but because its allegations do not meet the legal requirements for this claim.

*Melnick v. Polis*, 2023 WL 11918117, *4-5 (D. Colo. Dec. 1, 2023) (unpublished).

This rationale is sound. The Court applies the same reasoning here and concludes that Plaintiff has failed to satisfy the prior physical injury requirement of § 1997e(e), meaning he cannot recover compensatory damages in this case.

## V. Repeated Deficiencies

This is not the first case brought by Plaintiff claiming that these housing conditions violated his constitutional rights. On December 11, 2024, Plaintiff filed a complaint against the same defendants alleging similar claims based on his housing status during this time period and the statements and actions of the defendants. *See Adkins v. Kansas*, Case No. 24-3223, Doc. 1. On February 25, 2025, the Court issued a memorandum and order to show cause in that case, explaining, among other things, the standards for an Eighth Amendment claim of cruel and unusual punishment based on prison officials exhibiting deliberate indifference to a known risk of serious harm. *Adkins v. Kansas*, Case No. 24-3223, 2025 WL 604994, *4 (D. Kan. Feb. 25, 2025) (unpublished). That order also explained that the Eleventh Amendment bars suits for money damages against the State of Kansas, its agencies, and a state agent sued in his or her official capacity. *Id.* at 5. It cautioned Plaintiff that allegations of "inadequate" responses by Defendants Williams, Zmuda, and Holthaus to Plaintiff's grievances are insufficient to state a plausible claim for relief under § 1983. *Id.* at 6. Finally, it explained the requirements that § 1997e(e) places on requests for compensatory damages. *Id.* at 7.

Plaintiff was given time to file an amended complaint that cured these deficiencies and others identified by the Court, but the amended complaint he filed failed to cure the deficiencies. *See Adkins*, Case No. 24-3223, 2025 WL 1078863, *1 (D. Kan. April 10, 2025) (unpublished). The allegations in the amended complaint and Plaintiff's other filings in that case are strikingly similar to those contained in the amended complaint he filed in the case now before the Court. On April 10, 2025, the Court dismissed Case No. 24-3223 for failure to state a claim, finding that the facts alleged by Plaintiff "failed to provide factual support for the alleged 'known risk of serious harm'" and continued to assert insufficient claims "regarding the grievance process and the failure

to properly respond to grievances." *Id.* at *3-4. Less than a month later, Plaintiff filed the case now before the Court which, as noted above, contains many of the same deficiencies in pleading.

"'[R]epetitious litigation of virtually identical causes of action' may be dismissed under [28 U.S.C.] § 1915 as frivolous or malicious." *McWilliams v. Colorado*, 121 F.3d 573, 574 (10th Cir. 1997) (citation omitted) (finding action frivolous against new defendant even if not repetitive where new defendant was entitled to immunity). Thus, in addition to being subject to dismissal for failure to state a plausible claim on which relief can be granted, this matter is subject to dismissal as frivolous.

"'The right of access to the courts is neither absolute nor unconditional.'" *Sieverding v. Colo. Bar Ass'n*, 469 F.3d 1340, 1343 (10th Cir. 2006) (citation omitted). As the United States Supreme Court has recognized: "Every paper filed with the Clerk of this Court, no matter how repetitive or frivolous, requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice." *In re McDonald*, 489 U.S. 180, 184 (1989). Screening repetitive complaints that state prohibited or unsupported claims already dismissed in other suits by Plaintiff for these deficiencies does not promote the interests of justice.

Plaintiff has now had four opportunities, in two different lawsuits, to cure the deficiencies in his claims against Defendants based on his housing conditions for a period of approximately 100 days beginning on April 8, 2024. Because Plaintiff has failed to state a plausible claim for relief based on his housing conditions during this period of time, despite repeated opportunities to do so and repeated explanations of the deficiencies in the pleadings, the Court will dismiss these claims with prejudice. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (citing *Oxendine*

*v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), for when dismissals with prejudice of a pro se pleading are appropriate).

IT IS THEREFORE ORDERED BY THE COURT that this matter is **dismissed with prejudice** for failure to state a claim upon which relief can be granted.

IT IS SO ORDERED.

Dated June 23, 2025, in Kansas City, Kansas.

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE